UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

CHASE BANK USA, N.A.,

                Plaintiff,

      -against-

ALLEGRO LAW, LLC, *et al.*,

                Defendants.

-----------------------------------------------------------------x

**ORDER**

08-CV-04039 (PKC)

PAMELA K. CHEN, United States District Judge:

     Plaintiff Chase Bank USA, N.A. ("Chase") commenced this action alleging that Defendants perpetrated a scheme that fraudulently induced thousands of Chase credit cardmembers ("participating cardmembers") to stop paying down the outstanding balances on their credit cards, for Defendants' own profit. (*E.g.*, Dkt. No. 40 ("Am. Compl.") ¶¶ 3, 9.)

     On June 23, 2011, Judge Denis R. Hurley allowed original counsel for Defendant AmeriCorp, Inc. ("AmeriCorp") to withdraw, and directed AmeriCorp to retain new counsel within 30 days. (Dkt. No. 84, at 3.)

     AmeriCorp has not retained new counsel and accordingly, as a corporation which is not permitted to proceed *without* counsel, has "failed to plead or otherwise defend" this action. Fed. R. Civ. P. ("FRCP") 55(a); *see SEC v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975) ("It is settled law that a corporation may not appear in a lawsuit against it except through an attorney[] . . . and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to [FRCP] 55[.]" (citations omitted)). Accordingly,

on August 31, 2011, the Clerk of this Court entered a default order as to AmeriCorp. (Dkt. No. 88.)

On May 15, 2013, Chase filed its unopposed motion for the entry of default judgment against AmeriCorp ("Motion") for $11,767,496.11 in damages, plus pre-judgment interest, under FRCP 55(b). (Dkt. No. 90, at 1.) This Court GRANTS IN PART and DENIES IN PART Chase's Motion for the reasons set forth below.

I. Background

*1. Allegations in the Amended Complaint*[1]

According to the Amended Complaint, recent "debt settlement" schemes have "flourished throughout the country." (Am. Compl. ¶ 19.) Defendants Allegro Law, LLC ("Allegro") and its agent, Keith Anderson Nelms, offered one such scheme to participating cardmembers ("Allegro scheme"), which started in late April 2008. (*Id.* ¶¶ 1, 14.) AmeriCorp operated the Allegro scheme on "a day-to-day basis" by, among other things, (i) providing "back office and call center services" and (ii) processing payments to Allegro from participating cardmembers. (*Id.* ¶¶ 1, 21.)

Here is how the Allegro scheme worked:

- Defendants convinced participating cardmembers that, by contracting with Defendants for their services, the cardmembers could legally cease making payments on and eventually "eliminate or substantially reduce" their obligation to pay the outstanding balances on their credit cards from Chase. (*Id.* ¶¶ 9, 19.)

---

[1] Given AmeriCorp's default in this action, this Court accepts as true the facts alleged in the Amended Complaint for purposes of Chase's Motion. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (holding that, in considering motions for default judgment, district courts must "accept[] as true all of the factual allegations of the complaint, except those relating to damages"); *accord Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability[.]").

2

- Rather than paying Chase, participating cardmembers redirected their money to Defendants. In return for "up front" fees from the cardmembers, Defendants (i) issued boilerplate letters to Chase, claiming that Chase had committed "unspecified [Fair Credit Billing Act] and/or other statutory violations" with respect to the cardmembers' accounts and (ii) falsely promised the cardmembers that Allegro would retain the rest of the money to subsequently settle with Chase for less than the outstanding balances for their accounts. (*Id.* ¶¶ 9, 50.)

- In reality, Defendants' services "d[id] not lead to the lawful elimination of any [participating cardmembers'] debt, but rather to increased balances owed to [Chase]," because (i) the boilerplate letters were "bogus" and "without legal basis" to excuse participating cardmembers from paying Chase, and (ii) Defendants "mispresent[ed] that [participating cardmembers'] money w[ould] be applied to [their] debt" in settling this debt with Chase. (*Id.* ¶¶ 35, 43, 71-72.)

In fact, Defendants paid no money to Chase on behalf of participating cardmembers. (*See id.* ¶ 50 ("[D]efendants led Chase's cardmembers to believe that, using funds that cardmembers were sending in to Allegro, Allegro would be making payments to Chase and other creditors on behalf of cardmembers. This occurred even though defendants did not intend to make any such payments to Chase or other creditors[.]").

Based on these allegations, Chase asserts five state law claims over which this Court has diversity jurisdiction: declaratory and injunctive relief (Count I); tortious interference with contracts (Count II); violations of the New York Consumer Protection Act (Count III); unjust enrichment (Count IV); and conspiracy (Count V).[2] (*See id.* ¶¶ 17, 38-81.)

  2. *Chase's Motion*

In support of its Motion, Chase submits a declaration from Susan Coniglio ("Coniglio"). Since 1999, Coniglio has worked in Chase's Credit Card Services business. In 2004, Coniglio joined the group responsible for devising and implementing this business's collection policies and strategies with respect to delinquent credit card accounts. From 2010 onward, Coniglio has

---

[2] This Court is satisfied that "the alleged facts constitute . . . valid cause[s] of action." *Au Bon Pain Corp.*, 653 F.2d at 65.

served as the group's "Senior Business Operations Manager." (Dkt. No. 90-4 ("Coniglio Decl.") ¶¶ 1-3.)

Coniglio's declaration proposes "four alternative measurements of [Chase's] damages" arising from the Allegro scheme. (*Id.* ¶ 25.) These measurements calculate damages based on varying assumptions about "what Chase reasonably would have expected to have been paid by [participating cardmembers] if Allegro had not sold its scheme to them, causing them to send Allegro monthly payments, which necessarily resulted in [participating cardmembers] having insufficient funds to pay Chase at least the minimum payments due each month."[3] (*Id.* ¶ 13; *see id.* ¶ 26.)

(a)     *The first "alternative measurement"* calculates a total of $11,767,496.11 in damages. (*Id.* ¶ 15.) This calculation assumes that (i) all participating cardmembers possessed "a desire to settle their [credit card] account balances with Chase for less than the full amount due" and (ii) absent the Allegro scheme, the cardmembers would have settled with Chase on their own to pay a portion of the outstanding balances on their credit cards in exchange for curtailing minimum monthly payments to Chase. (*See id.* ¶¶ 14-16.)

(b)     *The second "alternative measurement"* calculates a total of $9,797,229.52 in damages. (*Id.* ¶ 21.) This calculation assumes that all participating cardmembers belonged to the category of Chase cardmembers who, though late in making the minimum monthly payments on their credit card accounts, "ultimately did not have an ongoing delinquency problem," and would have continued to make these payments to Chase, absent the Allegro scheme. (*Id.* ¶ 17(a).)

---

[3]     By applying specific criteria and eliminating certain of the 5,453 cardmembers' accounts with alleged connections to the Allegro scheme, Coniglio identifies 3,327 cardmembers' accounts, with outstanding balances totaling $22,543,096, that are *directly* attributable to damages as a result of this scheme. (*See id.* ¶¶ 7-12.)

(c) *The third "alternative measurement"* calculates a total of $4,598,791.58 in damages. (*Id.* ¶ 22.) This calculation assumes that all participating cardmembers belonged to a third category of Chase cardmembers who were late in making the minimum monthly payments on their credit card accounts, failed to timely cure the delinquency, and eventually entered into Chase's formal pre-charge off collection process. (*Id.* ¶ 17(b).)

(d) *The fourth "alternative measurement"* calculates $7,394,135.49 in damages. (*Id.* ¶ 23.) This calculation assumes that participating cardmembers belonged to an equal "blend" of Chase cardmembers in categories (b) and (c), as detailed above. (*Id.* ¶ 17(c).)

Chase's Motion seeks the entry of default judgment against AmeriCorp for damages based on the first "alternative measurement" ($11,767,496.11). (*See* Dkt. No. 90, at 1.)

II. Discussion

FRCP 55(b)(2) provides that, in considering Chase's Motion, this Court "*may* conduct hearings . . . when, to enter or effectuate judgment, it needs to[] . . . conduct an accounting; . . . determine the amount of damages; . . . establish the truth of any allegation by evidence; or . . . investigate any other matter." *Id.* (emphasis added). "By its terms, [FRCP] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court. . . . [I]t [i]s not necessary for the District Court to hold a hearing, as long as it ensure[s] that there [i]s a basis for the damages specified in a default judgment." *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

Here, this Court has determined that Chase's Motion, supported by Coniglio's declaration and accompanying documents, provides sufficient "basis for the damages specified in a default judgment [against AmeriCorp]." *Id.* Considering her years of experience in Chase's Credit Card Services business, Coniglio credibly alleges how participating cardmembers could

5

have acted in the absence of the Allegro scheme, such that an inquest to "establish the truth" behind such allegations would add little value. FRCP 55(b)(2)(C). Coniglio gives conservative calculations for "damages equivalent to what Chase reasonably would have expected to receive from its [cardmembers] if Allegro had not interfered" (Coniglio Decl. ¶ 26) based on four "alternative measurements." As such, an inquest to "conduct an accounting" or "determine the amount of damages" is similarly unnecessary. FRCP 55(b)(2)(A)-(B). This Court thus considers Chase's Motion *without* conducting an inquest.

Chase's Motion calculates the amount of damages based on the first "alternative measurement" ($11,767,496.11), which results in the largest damage award. The first "alternative measurement" assumes that, if participating cardmembers had not signed onto the Allegro scheme, *every one* of the cardmembers would have separately settled with Chase for less than the outstanding balances on their credit cards.

Coniglio's own declaration, however, undercuts the validity of this assumption. Coniglio attests to the fact that participating cardmembers, *i.e.*, those Chase cardmembers who joined the Allegro scheme, "most likely resembled" the category of cardmembers "who still managed to make regular monthly payments *which they intended ultimately to go toward paying . . . Chase*." (Coniglio Decl. ¶ 17(a) (emphasis added).) In other words, according to Coniglio, absent the Allegro scheme, participating cardmembers were much more likely to persist in paying down their credit cards on a monthly basis than they were to arrange a settlement with Chase.

The fact that Allegro represented to participating cardmembers that it would use their monthly payments to settle with Chase does not support the assumption that the cardmembers would have sought to settle with Chase on their own, which underlies the first "alternative measurement." Indeed, the Allegro scheme appealed to the category of participating

6

cardmembers who had every intention of continuing to make minimum monthly payments, but were enticed by Allegro's bogus offer to settle with Chase on the cardmembers' behalf in return for their redirecting these payments to Allegro. (*See id.*) Accordingly, this Court alternatively adopts the amount of damages based on the second "alternative measurement" ($9,797,229.52)—which more accurately assumes that, "if Allegro had not interfered" (*id.* ¶ 26), Chase would have continued receiving minimum monthly payments from participating cardmembers who were characteristically only late, not delinquent, in making these payments.[4]

Tellingly, in at least two other actions involving different "debt elimination" schemes, Chase sought and obtained judgments in amounts equal to the minimum monthly payments of which it was deprived, as opposed to settlements that it could have arranged with participating cardmembers.

In *Chase Bank USA, N.A. v. Wickline* ("*Wickline*"), No. 06-cv-00012 (S.D. Ohio), Chase sought, and the district court entered, default judgment for an amount reflecting minimum monthly payments that participating cardmembers would have made, but which Chase did not receive as a result of "Defendants' promotion of and participation in sham arbitrations and debt elimination schemes." *See* Opinion & Order at 1, *Wickline*, No. 06-cv-00012 (S.D. Ohio Nov. 26, 2007); Memorandum in Support of Plaintiff Chase Bank USA, N.A.'s Motion for a Judgment of Default, a Non-Oral Hearing on Damages, & a Permanent Injunction, Ex. 1 ¶¶ 2, 5-6, 9, *Wickline*, No. 06-cv-00012 (S.D. Ohio July 13, 2007).

At Chase's request, the district court in *Chase Manhattan Bank USA, N.A. v. Stratia Corp.* ("*Stratia*"), No. 05-cv-00196 (N.D. Tex.), took the same approach in entering final

---

[4] Coniglio, in effect, admits that the second "alternative measurement" is better than the third or fourth "alternative measurements," because it is based on the category of Chase cardmembers which "best matche[s] the situation of [cardmembers] (like those who signed up for Allegro's program)." (Coniglio Decl. ¶ 17(a).)

7

judgment against one of the defendants for damages to Chase arising from his "sham arbitration and fraudulent debt elimination schemes" involving participating cardmembers' accounts. *See* Final Judgment at 1, *Stratia*, No. 05-cv-00196 (N.D. Tex. Nov. 17, 2006); Appendix to Chase Bank USA N.A.'s Brief in Support of Its Partial Motion for Summary Judgment Against Bruce Hawkins, Ex. G ¶¶ 4, 8, 10, *Stratia*, No. 05-cv-00196 (N.D. Tex. June 29, 2006).

Thus, this Court finds that the appropriate measure of damages is the one that assumes that, absent the Allegro scheme, Chase would have collected minimum monthly payments from participating cardmembers before their credit card accounts became delinquent due to the withholding of these payments under the scheme (Coniglio Decl. ¶ 20 ("maximum 210 day period")), which amounts to $9,797,229.52.

III. Conclusion

Accordingly, this Court GRANTS Chase's request for the entry of default judgment against AmeriCorp, but DENIES the Motion insofar as Chase seeks $11,767,496.11 in damages, plus pre-judgment interest. A default judgment in Chase's favor shall be entered in the amount of $9,797,229.52 in damages, plus pre-judgment interest.

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: June 18, 2013
       Brooklyn, New York